# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

LHF Productions, Inc.,

    Plaintiff

v.

Matthew Wilson,

    Defendant

Case No.: 2:16-cv-02368-JAD-NJK

**Order Granting Motion for Default Judgment**

[ECF No. 46]

This is one of several essentially identical cases filed by plaintiff LHF Productions, Inc., in which LHF sues many unidentified Doe defendants—under a single filing fee—for separately infringing its copyright in the film "London Has Fallen" by using BitTorrent software. LHF's practice in these cases is to move for expedited discovery to identify the defendants, and then systematically dismiss the claims against defendants after failing to serve them or settling with them.[1] Now, only one defendants remains: Matthew Wilson. It has been over six months since the Clerk of Court entered default against Wilson, and he continues to avoid this action against him. So, LHF moves for default judgment against him,[2] and I grant the request in part.

## Discussion

**A.    Default-judgment standard**

Federal Rule of Civil Procedure 55(b)(2) permits a plaintiff to obtain default judgment if the clerk previously entered default based on a defendant's failure to defend. After entry of default, the complaint's factual allegations are taken as true, except those relating to damages.[3] "[N]ecessary facts not contained in the pleadings, and claims [that] are legally insufficient, are

---

[1] *See, e.g.*, *LHF Productions, Inc. v. Kabala*, 2:16-cv-02028-JAD-NJK; *LHF Productions, Inc. v. Buenafe*, 2:16-cv-01804-JAD-NJK; *LHF Productions, Inc. v. Smith*, 2:16-cv-01803-JAD-NJK; *LHF Productions, Inc. v. Boughton*, 2:16-cv-01918-JAD-NJK.

[2] ECF No. 46.

[3] *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam); FED. R. CIV. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

not established by default."[4]  The court has the power to require a plaintiff to provide additional proof of facts or damages in order to ensure that the requested relief is appropriate.[5]  Whether to grant a motion for default judgment lies within my discretion,[6] which is guided by the seven factors outlined by the Ninth Circuit in *Eitel v. McCool*:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.[7]

A default judgment is generally disfavored because "[c]ases should be decided upon their merits whenever reasonably possible."[8]

**B.     The BitTorrent protocol**

A brief description of the BitTorrent protocol is helpful to contextualize my *Eitel* analysis.  *Safety Point Products, LLC v. Does* describes it well:

> BitTorrent is a program that enables users to share files via the internet.  Unlike other "peer-to-peer" (P2P) file sharing networks that transfer files between users or between a user and a central computer server, BitTorrent allows for decentralized file sharing between individual users who exchange small segments of a file between one another until the entire file has been downloaded by each user.  Each user that either uploads or downloads a file segment is known as a "peer."  Peers that have the entire file are known as "seeds."  Other peers, known as "leeches" can simultaneously download and upload the pieces of the shared file until they have downloaded the entire file to become seeds.
>
> Groups of peers that download and upload the same file during a given period are known as a "swarm," with each peer being

---

[4] *Cripps v. Life Ins. Co.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

[5] *See* FED. R. CIV. P. 55(b)(2).

[6] *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986).

[7] *Id.* at 1471–72.

[8] *Id.* at 1472.

identified by a unique series of alphanumeric characters known as "hashtag" that is attached to each piece of the file. The swarm's members are relatively anonymous, as each participant is identifiable only by her Internet Provider (IP) address. Overseeing and coordinating the entire process is a computer or server known as a "tracker" that maintains a record of which peers in a swarm have which files at a given time. In order to increase the likelihood of a successful download, any portion of the file downloaded by a peer is available to subsequent peers in the swarm so long as the peer remains online.

But BitTorrent is not one large monolith. BitTorrent is a computer protocol, used by various software programs known as "clients" to engage in electronic file-sharing. Clients are software programs that connect peers to one another and distributes data among the peers. But a peer's involvement in a swarm does not end with a successful download. Instead, the BitTorrent client distributes data until the peer manually disconnects from the swarm. It is only then that a given peer no longer participates in a given BitTorrent swarm.[9]

### C. Evaluating the *Eitel* factors

#### 1. *Possibility of prejudice to LHF*

The first *Eitel* factor weighs in favor of granting default judgment against Wilson. LHF sent Wilson numerous demand letters and a summons along with the first-amended complaint, but Wilson never responded.[10] LHF claims that Wilson infringed its copyright by downloading its film using BitTorrent software. Given the nature of BitTorrent software, Wilson may be exacerbating LHF's injury by continuing to seed the file to the BitTorrent swarm.

#### 2. *Substantive merits and sufficiency of the claims*

The second and third *Eitel* factors require LHF to demonstrate that it has stated a claim on which it may recover.[11] The first-amended complaint sufficiently pleads LHF's direct-copyright-infringement, contributory-copyright-infringement, and vicarious-liability claims.

---

[9] *Safety Point Products, LLC v. Does*, 2013 WL 1367078, at *1 (N.D. Ohio Apr. 4, 2013) (internal citations omitted).

[10] ECF No. 46 at 4.

[11] *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

3

To present a prima facie case of direct infringement, LHF must show that: (1) it owns the allegedly infringed material, and (2) the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106.[12] LHF alleges that it is the owner of the copyright registration for the film "London Has Fallen."[13] LHF also alleges that Wilson willfully violated several exclusive rights granted by 17 U.S.C. § 106, and that those violations caused it to suffer damages.[14]

The contributory-copyright-infringement claim requires LHF to allege that Wilson "had knowledge of the infringing activity" and "induce[d], cause[d,] or materially contribute[d] to the infringing conduct of another."[15] "Put differently, liability exists if the defendant engages in personal conduct that encourages or assists the infringement."[16] Given the nature of BitTorrent technology, BitTorrent swarm participants who download files compulsorily upload those same files so that other participants may download them at a faster rate. Accordingly, LHF's allegations that each defendant is a contributory copyright infringer *because* they participated in a BitTorrent swarm[17] is sufficient to satisfy the induced-caused-or-contributed requirement. LHF satisfies the remaining requirements by alleging that Wilson knew or should have known that other BitTorrent-swarm participants were directly infringing on LHF's copyright by downloading the files that they each uploaded.[18]

---

[12] *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001).

[13] ECF No. 8 at 10, ¶ 46; *see also* ECF No. 8-2.

[14] ECF No. 8 at 10–11.

[15] *A&M Records*, 239 F.3d at 1019 (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt.*, 443 F.2d 1159, 1162 (2d Cir. 1971) and citing *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996)).

[16] *Id.* (quoting *Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 693, 706 (2d Cir. 1998)).

[17] ECF No. 8 at 11, ¶ 56.

[18] *Id.* at 12, ¶¶ 58–61.

4

LHF also claims that Wilson, as the account holder for the Internet service, is vicariously liable for any infringing activity conducted by other users on his internet connection.[19] "Vicarious infringement is a concept related to, but distinct from, contributory infringement."[20] "To state a claim for vicarious copyright infringement, [LHF] must allege that [Wilson] had (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity."[21]

LHF's allegations satisfy the first prong. As the court discussed in *Dallas Buyers Club, LLC v. Doughty*, "the Internet service account holder, appea[rs] to have had exclusive control over use of the Internet service" and the account holder "could have simply secured access to the Internet by creating a password or by changing an already existing password."[22] "Thus, . . . [the account holder] had the capacity to terminate use of his Internet service by any infringing third party if he believed it was being used to violate applicable law."[23]

LHF also satisfies the direct-financial-interest prong. "The essential aspect of the direct financial benefit inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of how substantial the benefit is in proportion to a defendant's overall profits."[24] "Financial benefit exists where the availability of infringing material acts as a 'draw' for customers."[25] "The size of the 'draw' relative to a defendant's overall business is immaterial. A defendant receives a 'direct financial benefit' from a third-party infringement so long as the infringement of third parties acts as a 'draw' for customers 'regardless of *how substantial* the benefit is in proportion to a defendant's overall

---

[19] *Id.* at 14.

[20] *Perfect 10, Inc. v. Visa Intern. Service Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007).

[21] *Id.*

[22] *Dallas Buyers Club, LLC v. Doughty*, 2016 WL 1690090 (D. Or. Apr. 27, 2016).

[23] *Id.* (citing *A&M Records*, 239 F.3d 1004).

[24] *Perfect 10, Inc. v. Giganews, Inc.*, 2014 WL 8628031, at *3 (C.D. Cal. Nov. 14, 2014) (quoting *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004)).

[25] *A&M Records*, 239 F.3d at 1023.

profits."[26] LHF alleges that Wilson benefitted from third-party infringement by viewing "London Has Fallen" without paying for it.[27] The law is clear that it doesn't matter how large the financial benefit is: by watching the BitTorrent-downloaded film, Wilson saved the cost of a movie ticket, and that is a direct financial benefit.

I therefore find that LHF sufficiently pled each of its claims in the first-amended complaint. I also find that LHF's claims have substantive merit, subject to any defenses that Wilson could raise.

### *3. Sum of money at stake*

The sum-of-money factor requires me to consider "the amount of money at stake in relation to the seriousness of [Wilson's] conduct."[28] "If the sum of money at stake is completely disproportionate or inappropriate, default judgment is disfavored."[29] LHF asks for statutory damages and attorney's fees and costs.

For statutory damages, LHF requests $15,000 under 17 U.S.C. § 504(c).[30] The statute sets a $750 minimum and a $30,000 maximum award of damages for copyright infringement,[31] and that maximum can be increased up to $150,000 where the infringement was willful.[32] I have "wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima."[33]

---

[26] *Perfect 10,* 2014 WL 8628031, at *3 (quoting *Ellison*, 357 F.3d at 1079).

[27] ECF No. 8 at 13, ¶ 68.

[28] *Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1071 (D. Ariz. 2006) (quoting *PepsiCo. Inc v. California Security Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002)).

[29] *Twentieth Century Fox*, 438 F. Supp. 2d at 1071.

[30] ECF No. 46 at 8.

[31] 17 U.S.C. § 504(c)(1).

[32] 17 U.S.C. § 504(c)(2).

[33] *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990) (quoting *Harris v. Emus Records Corp.*, 738 F.2d 1329, 1335 (9th Cir. 1984)).

Given Wilson's numerous opportunities to respond to LHF's demand letters, first-amended complaint, and this motion, coupled with LHF's unopposed allegations that I take as true, the factual showing before me indicates that Wilson is a willful copyright infringer. But I do not find that $15,000 is necessary to compensate LHF for its injury and to deter Wilson and other BitTorrent users. Although I acknowledge that other courts—even in LHF's other cases in another district—awarded $15,000 for the same offense, I am not persuaded by their actions. After considering the lost-profits movie ticket sales, the cost of identifying infringers and pursuing litigation, and the boundaries provided by § 504(c), I determine that $1,500 is the appropriate damage award. This amount—187.5 times as much as the average $8.00 per movie ticket suggested by LHF[34]—adequately accomplishes the goals of § 504(c) to protect copyrighted works and deter infringement. This amount is also not excessive because it is only 1% of the statutory maximum for willful infringement.

The Copyright Act also allows courts to award the recovery of full costs and reasonable attorney's fees to the prevailing party as part of those costs.[35] LHF, in applying the lodestar method,[36] moves for $5,625 in attorney's fees[37] and $480 in costs, for a total of $6,105. The total sum of money at stake, then, is $7,605, and I find that this factor weighs in favor of default judgment.

### 4. *Possibility of a dispute concerning material facts*

Next I consider the possibility that material facts are disputed. LHF adequately alleged three copyright-infringement claims against Wilson. Wilson failed to appear or otherwise respond, so he admitted as true all of the material facts alleged in LHF's complaint. Because those facts are presumed true and Wilson failed to oppose this motion, no factual disputes exist that would preclude the entry of default judgment against him.

---

[34] *See* case 2:16-cv-2028-JAD-NJK, ECF No. 66 at 9 n.3 and accompanying text (LHF's objection to report and recommendation, incorporated by reference in this case at ECF No. 38).

[35] 17 U.S.C. § 505 (2012).

[36] *See Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).

[37] This number is based on a rate of $375.00 per hour for 15 hours.

### 5. *Excusable neglect*

Under this factor, I consider whether Wilson's default may have resulted from excusable neglect. LHF sent Wilson two demand letters roughly eight and five weeks prior to filing its first-amended complaint. Wilson did not respond to either of them. Then LHF filed its first-amended complaint on January 5, 2017, and sent Wilson a third demand letter. He didn't respond to that letter either. LHF served Wilson with process on March 2, 2017,[38] and Wilson failed to appear or file an answer to the first-amended complaint. Six and a half months later, LHF moved for entry of default against Wilson, and three weeks after that motion was granted, LHF moved for default judgment.[39] Wilson has never appeared or responded. Wilson has demonstrated a habit of ignoring LHF, so I can only conclude that his default was not the product of excusable neglect. This factor thus weighs in favor of entering default judgment.

### 6. *Favoring decisions on the merits*

"Generally, default judgments are disfavored because cases should be decided upon their merits whenever reasonably possible."[40] Because Wilson has failed to respond to anything at all in this action, it is not possible to decide this case on its merits, so this factor, too, weighs in favor of default judgment. As every factor weighs in favor of entering default judgment, I grant LHF's motion.

## D. Permanent injunction

As its final claim for relief, LHF asks for a permanent injunction enjoining Wilson from "directly or indirectly infringing [its] rights" over its film "including[,] without limitation[,] using the Internet to reproduce, to distribute, to copy, or to publish the motion picture."[41] The Copyright Act allows me to "grant temporary and final injunctions on such terms as [I] may

---

[38] ECF No. 14.

[39] ECF Nos. 43, 45, 46.

[40] *Eitel*, 782 F.2d at 1472.

[41] ECF No. 55 at 14.

deem reasonable to prevent or restrain infringement of a copyright."[42] The Supreme Court held in *eBay Inc. v. MercExchange, L.L.C.* that a plaintiff must satisfy a four-factor test to receive a permanent injunction in a patent-infringement case.[43] LHF must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."[44] This test also applies to copyright-infringement cases.[45]

LHF argues that "[m]onetary damages alone are simply inadequate" because "absent injunctive relief to force the deletion of each torrent file from [Wilson's] computer[] . . . infringement will continue unabated in exponential fashion."[46] But I conclude that a monetary judgment of $7,605 is sufficient to compensate LHF for any infringement injury and likely to sufficiently deter Wilson from further infringing LHF's copyright, so LHF fails to satisfy the second factor of the permanent-injunction test, and I deny its request for injunctive relief.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that LHF's motion for default judgment against Matthew Wilson **[ECF No. 46] is GRANTED in part and DENIED in part**. I award LHF $1,500 in statutory damages and $6,105 in reasonable attorney's fees and costs for a total of $7,605. I decline to issue a permanent injunction against Wilson.

. . .

---

[42] 17 U.S.C. § 502(a).

[43] *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

[44] *Id.*

[45] *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 995–96 (9th Cir. 2011).

[46] ECF No. 46 at 11.

The **Clerk of Court** is directed to **ENTER JUDGMENT** in favor of LHF Productions, Inc. and against Matthew Wilson in the total amount of $7,605 and **CLOSE THIS CASE**.

Dated: June 1, 2018

_____
U.S. District Judge Jennifer A. Dorsey